UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO DE JESUS MARTINEZ, et al., *Petitioner-Plaintiffs*, v. KRISTJEN NIELSEN, et al., *Respondent-Defendants*. | Civil Action No. 18-10963 OPINION AND ORDER |

**ARLEO, United States District Judge**

**THIS MATTER** arises from the detention of Antonio de Jesus Martinez, a law-abiding undocumented immigrant and married father of two, who was told by an agency of the United States Government that he could apply for a waiver to legalize his immigration status but was abruptly arrested by the same agency when he tried to do so.

### I.   Background

Petitioner-Plaintiff, Antonio de Jesus Martinez, is a citizen of El Salvador who has lived in the United States without authorization for approximately the past 15 years. Compl. ¶¶ 1, 26-27. Mr. Martinez is married to a United States citizen and with his wife, Plaintiff Vivian Martinez, is the father of two young children. Id. ¶¶ 8, 26. Mr. Martinez is a Heating Ventilation and Air Conditioning (HVAC) technician and pays his taxes. Id. ¶ 28; Antonio Martinez Aff. ¶ 7, ECF No. 1-1. He has no criminal history and has never been arrested. Compl. ¶ 28. He taught himself English. A. Martinez Aff. ¶ 7. He supports his immediate family, and provides for his mother and siblings. Id. ¶¶ 5, 7.

Mr. Martinez entered the United States at age 19 in 2003 and was apprehended by border patrol. Id. ¶ 9. He was given notice to appear in court in Texas. Id. He hired a lawyer and moved

1

to New York to live with his family.  Id.  He attempted to transfer his case to New York, including by appearing in immigration court in Manhattan on his appointed court date.  Id.  He was unsuccessful in transferring his case and an immigration judge in Texas ordered him removed in absentia.  Id.; Compl. ¶27.  Mr. Martinez has continued to live in the United States and does not dispute the validity of this removal order in this action.[1]

Mr. Martinez seeks to legalize his immigration status through a process promulgated by the Department of Homeland Security ("DHS").  Generally, spouses of U.S. citizens are eligible to apply to become lawful permanent residents of the United States.  See 8 U.S.C. § 1255.  But a non-citizen spouse like Mr. Martinez, who has been ordered removed, may not apply domestically; rather, he must leave the United States to apply for an immigrant visa at a U.S. consulate abroad.  Further, his prior order of removal triggers various provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., that bar him from reentering the U.S. for up to 10 years even with a visa.  See 8 U.S.C. §§ 1182(a)(9)(A); (a)(9)(B).

In 2013, the Department of Homeland Security promulgated regulations that allow non-citizen spouses of U.S. citizens with no criminal history who have been present in the U.S. without authorization to apply for a waiver of inadmissibility for unlawful presence (a "provisional waiver").  The provisional waiver allows them to adjust their respective immigration status and obtain immigrant visas without a prolonged period of separation from their families—that is, a waiver of the multiple-year bar.  See Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule 78 Fed. Reg. 535, 536 (Jan 3, 2013).  In 2016, DHS expanded the program to make it available to non-citizens like Mr. Martinez who have final orders

---

[1] Mr. Martinez's immigration attorney, Bryan Pu-Folkes, is in the process of challenging the merits of that order on the grounds of, inter alia, ineffective assistance of counsel.  Pu-Folkes Aff. ¶ 12, ECF No. 1-3.

2

of removal.  See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016); id. at 50271 (stating that the provisional waiver program will "reduce[] separation time among family members during the immigrant visa process" and referencing the "humanitarian and emotional benefits derived from reduced separation of families[.]").

Under the provisional waiver program, a waiver applicant must file a Petition for Alien Relative ("Form I-130") with U.S. Citizenship and Immigration Services ("USCIS"), a division within DHS, to establish that the applicant and beneficiary have a bona fide relationship.  The applicant and beneficiary are then scheduled for an interview with USCIS to determine the validity of that relationship.  Once the Form I-130 is approved, the applicant files a Permission to Reapply for Admission to the United States form ("Form I-212") and then for a provisional unlawful presence waiver ("Form I-601A").

Based upon these regulations, Mr. and Ms. Martinez began the process of applying for a provisional waiver in 2016.  Compl. ¶ 29.  As part of this process, Mr. and Ms. Martinez, together with their attorney, appeared for an interview with U.S. Citizenship and Immigration Services ("USCIS") on their I-130 application on April 27, 2018 to confirm the bona fides of their marriage.  Id. ¶ 31.  At the conclusion of the interview, and despite DHS's regulations concerning the provisional waiver process, two Immigration and Customs Enforcement ("ICE") agents entered the interview room and abruptly arrested Mr. Martinez, purportedly based on a "new policy" of detaining any individual with an outstanding order of removal at an interview.[2]  Id. ¶ 31.  ICE agents transported Mr. Martinez to Hudson County Correctional Facility in New Jersey where he

---

[2] An ICE agent told Ms. Martinez that this "new policy" was announced through an internal memo and that, had the couple been scheduled for an interview a few weeks earlier, Mr. Martinez would not have been detained.  Compl. ¶ 31.  ICE is a division within DHS.

3

has been detained since April 27, 2018.  Id. ¶ 32.  Less than one week later, USCIS approved the Martinezes' I-130 application.  Id. ¶ 33.  Nevertheless, ICE did not release Mr. Martinez.  Id.

On June 22, 2018, Mr. Martinez filed this petition for a writ of habeas corpus and an emergency motion for a temporary restraining order seeking, inter alia, his release from custody and to enjoin Respondent-Defendants from removing him from the United States while he is pursuing the provisional waiver process.  ECF Nos. 1, 2.  That same day, the Court stayed Mr. Martinez's removal pending further order of the Court.  ECF No. 6.  On August 3, 3018, the Court entered an Order finding that the government's actions violated the Administrative Procedure Act ("APA") and Mr. Martinez's due process rights, and ordered him released so that he could complete the waiver process.  ECF No. 25.  This Opinion and Order supplements and amends the Court's August 3, 2018 Order.

**II.     Discussion**

Mr. Martinez sought an order releasing him from custody and enjoining Respondent-Defendants Kristjen Nielsen, Thomas Homan, Thomas Decker, and Ronald Edwards[3] from removing him until he exhausts his right to complete the process of obtaining a provisional unlawful presence waiver.  He argues that the government's attempt to detain and deport him as he engaged in a step of the provisional waiver process violated his rights under the Fifth Amendment and the APA.

---

[3] Kristjen Nielsen is named in her official capacity as Secretary of DHS.  Thomas Homan is named in his official capacity as Acting Director of ICE, within DHS.  Thomas Decker is named in his official capacity as Director of the New York Field Office for ICE.  Ronald Edwards is named in his official capacity as Director of the Hudson County Correctional Facility.

Respondent-Defendants contend that the Court lacks jurisdiction to review Mr. Martinez's claims and that, even if it did, the Court cannot grant Mr. Martinez relief because he has no right to engage in the provisional waiver process. The Court rejects these arguments.

**A. Jurisdiction**

As a threshold matter, the Court has jurisdiction over this matter, and that jurisdiction is not vitiated by 8 U.S.C. § 1252. Section 1252(g) strips federal court jurisdiction over "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Id. That is, the statute precludes judicial review of ICE's prosecutorial discretion to engage in three discrete types of actions: to commence proceedings, to adjudicate cases, or to execute removal orders. Reno v. Am. Arab Anti-Discrimination Comm., 525 U.S. 471, 482-83 (1999).

Respondent-Defendants contend that ICE engaged in the third of these types of actions when it detained and attempted to deport Mr. Martinez. But that is not what happened. ICE agents did not track down Mr. Martinez because of his final order of removal. Instead they waited until he appeared for an interview pursuant to DHS regulations that permit aliens *in exactly Mr. Martinez's position* to gain legal status, and attempted to frustrate those regulations by detaining Mr. Martinez without warning or explanation. ICE arrested Mr. Martinez because he presented himself for an I-130 interview and, as such, exceeded its legal authority when it chose to arrest him after he had begun a lawful process but before it was completed. The Honorable Paul Crotty in the Southern District of New York recently considered similar claims brought by a petitioner seeking to complete the provisional waiver process prior to his removal and found that Petitioner's claims were not barred by § 1252(g):

5

> Petitioner here does not challenge ICE's prosecutorial discretion. Rather, Petitioner challenges ICE's legal authority to exercise such discretion when the subject of the removal order also has a right to seek relief made available by the DHS. The Court's review of ICE's legal authority is not foreclosed by 8 U.S.C. § 1252(g). See e.g., Zadvydas v. Davis, 533 U.S. 678 (2001) (reviewing whether ICE has the statutory authority to detain an immigrant subject to a final removal order after the 90-day removal period).

Villavicencio Calderon v. Sessions, No. 18-5222, 2018 WL 3677891, at *5 (S.D.N.Y. Aug. 1, 2018); see also You, Xiu Qing v. Nielsen, No. 18-5392, 2018 WL 3677892, at *3 (S.D.N.Y. Aug. 2, 2018) (finding that the issue of whether "Respondents actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252(g)"). Mr. Martinez, like the petitioner in Villavicencio Calderon, is seeking review of DHS's legal authority to detain him at his I-130 interview and attempt to remove him before he has had the opportunity to finish the provisional waiver process.[4] Accordingly, § 1252(g) is inapplicable and does not strip the Court of jurisdiction over this matter.

Respondent-Defendants also contend that the Court's jurisdiction is precluded by sections 1252(a)(5) and (b)(9), which strip federal courts of jurisdiction to review challenges to an order of removal. It is well established that "[t]he REAL ID Act fundamentally altered the manner in which aliens may seek review of orders of removal. The law eliminated habeas corpus review over removal orders and provides that 'a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.'" Verde-Rodriguez v. Attorney

---

[4] Judge Crotty determined that ICE agents exceeded their legal authority because they were not executing a removal order when they arrested a man delivering a pizza to an army base whose identification check when he entered the army base revealed a final order of removal entered against him years ago. Villavicencio Calderon, 2018 WL 3677891. This is even more evident here since agents knew Mr. Martinez had a deportation order and abused their authority by using it to frustrate a lawful process.

6

Gen. U.S., 734 F.3d 198, 201 (3d Cir. 2013) (quoting 8 U.S.C. § 1252(a)(5)). In addressing the jurisdiction stripping and related transfer provisions of the REAL ID Act, the Third Circuit has held that "only challenges that directly implicate the order of removal" are reserved to the circuit courts. See Nnadika v. Attorney Gen. of U.S., 484 F.3d 626, 632-633 (3d Cir. 2007) (holding that "the District Court retains jurisdiction" where a non-citizen "does not challenge the administrative removal order"); see also Verde-Rodriguez, 734 F.3d at 205 (explaining that Nnadika held that the REAL ID Act did not apply when the petitioner challenged the Government's adjudication and rules concerning asylee relative petitions even though the denial of relief would result in deportation); Vasquez v. Aviles,[5] 639 F. App'x 898, 901 (3d Cir. 2016) (reiterating that Nnadika "held that the district court had jurisdiction to consider [the] petition" because the petition did not "directly implicate the order of removal," as it "point[ed] to no legal error in the final order of removal") (citing id. at 632–33); see also Jennings v. Rodriguez, 138 S. Ct. 830, 840 (2018) (rejecting interpretation of § 1252(b)(9) so broad that it would render detention claims "effectively unreviewable" and risk depriving detainees of any meaningful chance for judicial review.).

Here, Mr. Martinez does not challenge the validity of the order of removal against him, and is challenging its merits in a separate proceeding in the proper forum. Nor is the Court overturning Mr. Martinez's order of removal by granting him relief. In fact, whether or not Mr. Martinez obtains a provisional waiver, he will need to leave the United States at the end of the

---

[5] In Vasquez, which is unpublished, the Third Circuit held that the district court lacked jurisdiction pursuant to § 1252(g) to review the denial of relief under the Deferred Action for Childhood Arrivals ("DACA") program "because that decision involves the exercise of prosecutorial discretion not to grant a deferred action[.]" 639 F. App'x at 901. In that decision, the Third Circuit construed Petitioner to "claim that he was entitled to relief under DACA." Id. at 901. Here, however, Petitioner does not seek to have this Court review the discretionary decision to deny the provisional waiver; rather, he simply seeks to complete the provisional waiver process prior to any action to deport him.

7

process, thereby effectuating his order of removal. The issue is not <u>if</u>, but when. As Mr. Martinez does not bring a challenge to his order of removal but rather claims that he has the right to engage in the provisional waiver process <u>before</u> removal, sections 1252(a)(5) and (b)(9) are inapplicable and do not strip the Court of jurisdiction.[6] Thus, the decisions relied on by Respondent-Defendants, where the detainee sought direct review of a removal order, are distinguishable. <u>See, e.g.</u>, <u>Gonzalez-Lora v. Warden Fort Dix FCI</u>, 629 F. App'x 400, 401 (3d Cir. 2015) (affirming district court's dismissal for lack of jurisdiction "[b]ecause Gonzalez-Lora's claims 'directly challenge the lawfulness of the removal order and are intertwined with the IJ's decision,'" (citing <u>Verde-Rodriguez</u>, 734 F.3d at 207).

**B. Preliminary Injunction Staying Mr. Martinez's Removal**

Mr. Martinez seeks a temporary restraining order ("TRO") enjoining Respondent-Defendants from removing him from the United States while he pursues the provisional waiver process. The government opposes this request. Because Mr. Martinez has the right to complete the process created for individuals in his position, and because the government's attempt to frustrate that process violates his rights, the Court grants Mr. Martinez's request and issues an injunction pursuant to Fed. R. Civ. P. 65(a) staying his removal until he is able to complete the provisional waiver process.

In deciding whether to grant a TRO or preliminary injunction, the Court considers: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the

---

[6] Because the Court rejects all of Respondent-Defendants' jurisdictional arguments, it need not reach Petitioner's argument that Respondent-Defendants' reading of § 1252 would violate the Suspension Clause if applied to bar Petitioner's claims.

8

nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001). All four factors weigh in favor of granting Mr. Martinez relief.

Factors two, three, and four clearly weigh in Mr. Martinez's favor. It is undisputed that the Martinez family will be irreparably harmed if Mr. Martinez is deported before he can complete the provisional waiver process. See Padilla v. Kentucky, 559 U.S. 356, 365 (2010) ("We have long recognized that deportation is a particularly severe 'penalty[.]'") (citation omitted); Bridges v. Wixon, 326 U.S. 135, 154 (1945) ("[D]eportation . . . visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.). Mr. Martinez is a law-abiding person who pays his taxes. He is a supportive father and husband. He is the sole breadwinner for his family. His wife and children have already suffered from anxiety, depression, and financial instability as a result of his detention. Decl. of Vivian Martinez ¶¶ 3, 5-7. Denying Mr. Martinez the right to remain with his family as he completes the waiver process would irreparably inflict harm on Mr. Martinez, his wife, and his children.[7] Denying Mr. Martinez the opportunity to complete the waiver process would constitute the ultimate irreparable harm—deportation.

It is also clear that any harm to the government caused by staying Mr. Martinez's deportation is substantially outweighed by the harm his immediate deportation would cause his family, and that granting Mr. Martinez relief is in the public interest. The government urges the Court to consider that "[t]here is always a public interest in prompt execution of removal orders."

---

[7] The government argues that Mr. Martinez would be subject to a five-year bar from reentering the United States because of his in absentia order of final removal. Plaintiff-Petitioners counter that such a bar is inapplicable because Mr. Martinez had reasonable cause for missing his removal hearing. Under either scenario, Plaintiff-Petitioners have demonstrated that Mr. Martinez's deportation before he completes the waiver process would cause them irreparable harm.

Nken v. Holder, 556 U.S. 418, 436 (2009). But this case does not arise out the execution of a removal order; it involves the arrest of a gainfully employed, law-abiding individual availing himself of a lawful administrative process based on a 15-year-old removal order—hardly a "prompt" attempt to execute that order. Moreover, any interest in executing Mr. Martinez's order of removal, which will be effectuated when he leaves the country anyway, is outweighed by the interest in family unity that underscores the provisional waiver process.[8]

Finally, Mr. Martinez has demonstrated a likelihood of success on the merits so factor one also weighs in his favor. For the reasons that follow, the Court finds that Mr. Martinez has the right to complete the provisional waiver process, and that the government's attempt to detain and deport him contravene that right in violation of the Administrative Procedure Act ("APA").

### 1. Right to Apply for Provisional Waiver

A government agency is not free to disregard its own regulations. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). "Regulations with the force and effect of law supplement the bare bones" of federal statutes and an agency may not act "contrary to [those] existing valid regulations. Id. at 265, 268. When regulations "affect substantial individual rights," the agency has the "obligation" and "responsibility . . . to employ procedures that conform to the law." Morton v. Ruiz, 415 U.S. 199, 232 (1974) (internal citations omitted). Under the Accardi doctrine, when the government creates a regulatory process for seeking relief, that process creates

---

[8] See 8 CFR 50244, 50246 ("Individuals with approved provisional waivers may experience shortened periods of separation from their family members living in the United States while they pursue issuance of immigrant visas abroad, thus reducing any related financial and emotional strains on the families."); Provisional Unlawful Presence Waivers, https://www.uscis.gov/family/family-us-citizens/provisional-unlawful-presence-waivers (last visited Aug. 31, 2018) ("This new process was developed to shorten the time that U.S. citizens and lawful permanent resident family members are separated from their relatives while those relatives are obtaining immigrant visas to become lawful permanent residents of the United States.").

10

"a right to seek relief" even if there is no "right to the relief itself." Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003) (citing Accardi, 347 U.S. at 268).

In 2013, DHS promulgated regulations through the notice and comment process that created a process for obtaining a provisional waiver. In 2016, DHS, again through notice and comment, extended that process to non-citizen spouses with final orders of removal. "These regulations create a 'right to seek' the provisional waiver even when there is no 'right to the [waiver] itself.'"[9] Villavicencio Calderon v. Sessions, et al., No. 18-5222 (S.D.N.Y. Aug. 1, 2018) (slip op.) (quoting Arevalo, 344 F.3d at 15). Mr. Martinez thus has the right to apply for a provisional waiver.

### 2. Violation of the APA

The APA authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the APA, an agency may not "depart from a prior policy sub silentio or simply disregard rules that are still on the books"; to do so would be arbitrary and capricious. F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009). It is well settled that "rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency," and that a failure to follow those rules without explanation is arbitrary, capricious, and an abuse of discretion. Leslie v. Att'y Gen. of U.S., 611 F.3d 171, 175 (3d Cir. 2010).

This case involves exactly the arbitrary and capricious behavior our laws intend to prevent. DHS created a process for individuals in Mr. Martinez's exact position to apply for a waiver, and

---

[9] Mr. Martinez does not contend that he has a right to a provisional waiver. He simply "seeks access to the process and adjudication to which the regulations entitle him." Pet. Reply at 9, ECF No. 23.

required, as part of that process, his attendance at an interview to confirm the bona fides of his marriage. Then, based on a purported "new policy,"[10] ICE agents used that interview to prevent Mr. Martinez from completing the waiver process. If left unchecked, this "new policy" would render the provisional waiver a nullity.

Respondent-Defendants' attempt to deport Mr. Martinez by arresting him during his I-130 interview constitutes a disregard for the rights that they, on behalf of DHS, created. To attempt to remove Mr. Martinez while he was availing himself of the provisional waiver process is "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law." 5 U.S.C. § 706. It plainly violates Mr. Martinez's rights under the APA. Accordingly, Mr. Martinez is entitled to an injunction enjoining his removal from the United States until he exhausts the right to complete the process of obtaining a provisional unlawful presence waiver.

Having found a violation of the APA,[11] the Court also finds that Petitioner is entitled to complete the provisional waiver process. In Leslie v. Attorney General, 611 F.3d 171, 180 (3d Cir. 2010), the Third Circuit held that when an agency promulgates a regulation protecting the fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation, and failure to comply warrants invalidation of the challenged action without regard to whether the complaining party has been prejudiced by the alleged violation. See

---

[10] Plaintiffs allege that an ICE agent told Ms. Martinez that this "new policy" was announced through an internal memo. Compl. ¶ 31. Respondent-Defendants' response does not deny that the policy exists.

[11] The Court notes that having found a violation of the APA, relief is warranted without reaching the issue of whether the government's actions violated the Fifth Amendment. See, e.g., Torres v. U.S. Dep't of Homeland Sec., No. 17-1840 JM(NLS), 2017 WL 4340385, at *6 (S.D. Cal. Sept. 29, 2017) (explaining that the court need not reach the claim that Defendants violated his Fifth Amendment procedural due process rights where it determined that Defendants failure to follow the termination procedures in DACA violated the APA); You, 2018 WL 3677892, at *13 (declining to reach constitutional issue after finding that Petitioner demonstrated a likelihood of success on the merits of his APA claim).

id. In contrast, where no fundamental statutory or constitutional right is implicated, and the regulation at issue is merely an agency-created benefit, a showing of prejudice is required. See id. at 179.

Petitioner argues that the provisional waiver regulations were intended to safeguard family unity, a fundamental right, and thus created a procedural right to be considered for such status upon application. See Pet. Mem. at 16 (citing Leslie, 611 F.3d at 179); Pet. Reply at 9-13 (citing Accardi, 347 U.S. at 268; Abduli, 239 F3d at 550). The Court agrees that the regulations at issue, which were created for non-citizen spouses of United States citizens, implicate the fundamental right to family unity. See 8 C.F.R. 50244, 50246; Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016); id. at 50271. However, even if the regulations at issue do not implicate any fundamental statutory or constitutional right, Petitioner has also shown that he would be prejudiced by the inability to complete the provisional waiver process, as he will be immediately deported and separated from his family for years if his ability to complete the provisional waiver process is thwarted. Irrespective of whether Petitioner ultimately qualifies for a provisional waiver, it is undisputed that the Martinez's 1-130 application has been approved and he has not had the opportunity to complete the remainder of the process.

### C. Detention

Generally, detention is permitted to exceed the 90 days authorized by the Immigration and Nationality Act ("INA") for a "period reasonably necessary to secure removal." Zadvydas v. Davis, 533 U.S. 678, 699-700 (2001). But when removal is not "reasonably foreseeable," the continued detention is unreasonable and no longer permitted by the INA. Id. As Petitioner-Plaintiff's removal is no longer reasonably foreseeable, and any continued detention is also

unreasonable if he is to continue with the waiver process, Mr. Martinez's petition for habeas corpus is granted.

### III. Conclusion

For the reasons set forth herein, Plaintiff-Petitioner's motion for a TRO is **GRANTED** and his petition for habeas corpus is **GRANTED**.[12] This Opinion and Order supplements and amends the Court's August 3, 2018 Order. Respondent-Defendants are **ORDERED** to stay removal of Petitioner-Plaintiff, Mr. Martinez, from the United States until he exhausts his right to complete the process of obtaining an unlawful presence waiver. Respondent-Defendants are also **ORDERED** to release Petitioner-Plaintiff, Mr. Martinez, from custody.

**September 14, 2018**

/s Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
**United States District Judge**

---

[12] Defendants are directed to provide the Court with the "new policy" that served as the justification for Mr. Martinez's detention within 10 days of this Order.